FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

September 16, 2024

Christopher M. Wolpert
Clerk of Court

_____

ASHLEY PARNELL,

    Petitioner - Appellant,

v.

TAMIKA WHITE,

    Respondent - Appellee.

No. 23-5103
(D.C. No. 4:22-CV-00232-CVE-SH)
(N.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **HARTZ**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Ashley Parnell filed in the United States District Court for the Northern District of Oklahoma an application for relief under 28 U.S.C. § 2254, challenging her 2009 conviction in Oklahoma state court of first-degree murder of her boyfriend's 23-month-old son, S.R. She claimed that the state court lacked jurisdiction under *McGirt v. Oklahoma*, 591 U.S. 894 (2020). The district court dismissed the application as untimely and denied a certificate of appealability (COA). Ms. Parnell now seeks a COA from this court so that she can appeal the dismissal.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**EXHIBIT 1**

*See* 28 U.S.C. § 2253(c)(1)(A) (requiring COA to appeal denial of relief under § 2254). We deny a COA and dismiss the appeal.

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). In other words, the applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong." *Id.* If the application was denied on procedural grounds, the applicant faces a double hurdle. Not only must the applicant make a substantial showing of the denial of a constitutional right, but she must also show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

The district court concluded that Ms. Parnell did not timely file her § 2254 application within the one-year statute of limitations of the Antiterrorism and

Effective Death Penalty Act (AEDPA). *See* 28 U.S.C. § 2244(d).[1] Ms. Parnell does not argue that she filed her application within the limitations period. Instead she argues that her untimeliness should be excused because (1) her jurisdictional challenge may be raised at any time notwithstanding the statute of limitations, and (2) new evidence demonstrates her actual innocence of the crime of which she was convicted. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief."). As Ms. Parnell's appellate brief recognizes, her first argument is foreclosed by our decision in *Pacheco v. El Habti*, 62 F.4th 1233, 1245 (10th Cir. 2023) ("When Congress enacted the limitations period in AEDPA, it discerned no reason to provide a blanket exception for jurisdictional claims."); she raises it only to preserve for further review before the en banc court or the Supreme Court the argument that *Pacheco* was wrongly decided. We therefore need address only her actual-innocence claim.

Ms. Parnell argues that the untimeliness of her application is excused by a new expert report showing her actual innocence. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass [despite] expiration of the statute of limitations." *Mcquiggin*, 569 U.S. at 386. To show actual innocence, an applicant

---

[1] The district court also ruled that Ms. Parnell did not exhaust her available state remedies, as required by 28 U.S.C. § 2254(b)(1). Because we affirm on the statute-of-limitations ground, we do not address this issue.

Page 3

must present "new reliable evidence . . . that was not presented at trial" and show that "it is more likely than not that no reasonable juror would have convicted [her] in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). The court must make a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329. The applicant's case must be "truly extraordinary" to meet this threshold. *Id.* at 327 (internal quotation marks omitted).

Reviewing the district court's findings *de novo*, *see Fontenot v. Crow*, 4 F.4th 982, 1034 (10th Cir. 2021), we agree with its determination that the new expert report does not establish that it is more likely than not that no reasonable juror would convict Ms. Parnell. The central issue is whether the new report by Dr. Roland Auer so undermines the testimony of expert medical witnesses at trial that no juror could now convict Ms. Parnell.

We recount the relevant evidence from trial[2] and Dr. Auer's report: Ms. Parnell and S.R.'s father, R.R., began living together by January 2008. R.R. testified that on March 27, 2008, he got out of bed around 5:30 a.m. and heard S.R. making noise. When he went into S.R.'s room, S.R. "looked up" at him, "was wide-eyed," was able to focus on him, and had no apparent injuries. R., Vol. I at 1198 (internal quotation marks omitted). When R.R. returned to bed, he heard S.R. crying, and Ms. Parnell told him that she would attend to S.R. At some point he noticed that S.R. had stopped crying. He then heard Ms. Parnell scream, got out of bed, and saw Ms.

---

[2] Because Ms. Parnell does not challenge the district court's summary of the trial testimony, we rely on that summary.

Parnell carrying S.R., who was blue and limp and unresponsive. S.R. was taken to a hospital and treated for a skull fracture. He died the next day.

Evidence of other unexplained or purportedly accidental injuries suffered by S.R. while in the care of Ms. Parnell was presented at trial. There was also evidence that R.R. was abusive toward S.R., although only one witness (Ms. Parnell's sister) testified to physical abuse, which she had not reported to anyone when it allegedly occurred.

Three experts testified at trial regarding the cause of death and whether S.R. would have been expected to exhibit symptoms immediately after suffering the injury. Dr. Andrew Sibley testified that the cause of death was blunt head trauma and that, given the severity of the injury, he "would expect loss of consciousness to occur immediately or within a very short period of time." *Id.* at 1209 (internal quotation marks omitted). Dr. Sarah Passmore testified that S.R. had unusual injuries other than the skull fracture and opined that the cause of the skull fracture was child abuse. She also testified that S.R. would start to show symptoms immediately after suffering the skull fracture and that even though he might not have immediately lost consciousness, he would not have been "able to have a coherent interaction" with anyone. *Id.* at 1211 (internal quotation marks omitted). Ms. Parnell's expert witness, Dr. Joye Carter, testified that incapacitation could take about an hour from the time of the injury and "he may have been able to move for several minutes" after the injury. R., Vol. I at 1212. She concluded that it was "difficult to determine at whose hands the injury occurred." *Id.* (brackets and internal quotation marks omitted).

Page 5

The new evidence relied on by Ms. Parnell is an expert report by Dr. Auer, which says that (1) S.R.'s skull fracture could have been caused by an accidental fall, (2) toddlers frequently fall and S.R. had pneumonia which made it more likely that he would fall, and (3) S.R.'s skull fracture would be expected to be asymptomatic and painless and could have occurred as many as seven days before he exhibited symptoms. Ms. Parnell argues that the report suggests that the fracture could have been caused by an accidental fall or abuse by someone else that occurred as many as seven days before S.R. went limp and therefore undermines the government's theory that she must have inflicted the skull fracture because she was the last person to interact with S.R. before he went limp. She specifically contends that R.R. could have caused the injury because he was alone with S.R. shortly before she was and trial witnesses testified that he was prone to abusive behavior toward S.R.

We agree with the district court that it is not more likely than not that no reasonable juror would convict Ms. Parnell after hearing Dr. Auer's opinion. The report is contradicted by two experts at trial who opined that the fracture was the result of abuse and that S.R. would be expected to exhibit symptoms and lose consciousness shortly after the injury. It is also contradicted by Ms. Parnell's own expert at trial, who said that incapacitation could take about an hour from the time of the injury—a significantly shorter period than seven days. Conflicting evidence, even conflicts between experts, is for a jury to resolve; and we cannot say that a reasonable jury would credit only one of the witnesses. *See Blackmon v. Williams*, 823 F.3d 1088, 1102 (7th Cir. 2016) ("This sort of balance between inculpatory and

exculpatory witnesses is not enough to meet the demanding *Schlup* standard for actual innocence."); *Moore-El v. Luebbers*, 446 F.3d 890, 903 (8th Cir. 2006) ("[t]he existence of such a 'swearing match' would not establish that no reasonable juror could have credited the testimony of the prosecution witnesses"); *Bosley v. Cain*, 409 F.3d 657, 665 (5th Cir. 2005) (per curiam) (actual-innocence standard not met when the applicant "failed to establish that it is more likely than not that no reasonable juror would choose to believe [the state's witness]'s account over those accounts offered by [the petitioner's witnesses]"). *But cf. Blackmon*, 823 F.3d at 1109–1112 (Posner, J., dissenting in part) (affidavits from witnesses who came forward years after the trial that said the applicant was not one of the shooters met the *Schlup* standard because the new witnesses identified the shooters as individuals they recognized from the neighborhood whereas the state's eyewitnesses only identified the applicant from a photo array, which is a less reliable means of identification).

We **DENY** a COA and **DISMISS** the appeal.

Entered for the Court

Harris L Hartz
Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

September 16, 2024

Mr. Blain David Myhre
Blain Myhre LLC
P.O. Box 3600
Englewood, CO 80155

**RE:** 23-5103, Parnell v. White
Dist/Ag docket: 4:22-CV-00232-CVE-SH

Dear Counsel:

Enclosed is a copy the court's final order issued today in this matter.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc: Caroline E.J. Hunt

CMW/sls

**Aimee Nance**

| | |
|---|---|
| **From:** | ca10_cmecf_notify@ca10.uscourts.gov |
| **Sent:** | Monday, September 16, 2024 10:12 AM |
| **To:** | CM-ECF Intake OKND |
| **Subject:** | 23-5103 Parnell v. White "Case termination for COA" (4:22-CV-00232-CVE-SH) |

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

### Tenth Circuit Court of Appeals

**Notice of Docket Activity**

The following transaction was entered on 09/16/2024 at 9:10:02 AM Mountain Daylight Time and filed on 09/16/2024

| | |
|---|---|
| **Case Name:** | Parnell v. White |
| **Case Number:** | 23-5103 |
| **Document(s):** | Document(s) |

**Docket Text:**
[11120923] COA Denial. Terminated on the merits after submissions without oral hearing. Written, signed, unpublished. Judges Hartz (authoring), Baldock and Moritz. [23-5103]

**Notice will be electronically mailed to:**

Ms. Caroline E.J. Hunt: caroline.hunt@oag.ok.gov, fhc.docket@oag.ok.gov
Mr. Blain David Myhre: blainmyhre@gmail.com, sfra4ever@comcast.net


The following document(s) are associated with this transaction:
**Document Description:** Order Denying COA
**Original Filename:** 23-5103.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1104938855 [Date=09/16/2024] [FileNumber=11120923-0]
[56de536942799b7116ad63abe2e9bcfd86c26c85a087b74d6d83dafc662d0b9bdfabc4ac4f70b7a3cbb9
90a2ea2bf8a7f8b496a9d20e377c1a3b8f6705070edf]]

**Document Description:** COA Order Cover Letter
**Original Filename:** /opt/ACECF/live/forms/235103_11120923_135.pdf

**Electronic Document Stamp:**

[STAMP acecfStamp_ID=1104938855 [Date=09/16/2024] [FileNumber=11120923-1]
[45d277fc2ddbaa287bf549a6a3a9b5087e8d7adff033456ce663be0a17790cfa888634e7b9d9b49833679
69f60c759a7d853f3b7feeecbbd05634ae77b1bafcf]]

**Recipients:**

- Ms. Caroline E.J. Hunt
- Mr. Blain David Myhre