Case No. 23-6133

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

BEVERLY MICHELLE MOORE,

*Petitioner-Appellee,*

v.

TAMIKA WHITE,

*Respondent-Appellant.*

---

REPLY BRIEF OF APPELLANT/RESPONDENT

---

GENTNER F. DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA

TESSA L. HENRY, OBA #33193
KEELEY L. MILLER, OBA #18389
ASSISTANT ATTORNEYS GENERAL

313 NE 21st Street
Oklahoma City, OK   73105
(405) 521-3921 (Voice)/(405) 522-4534 (Fax)
tessa.henry@oag.ok.gov
keeley.miller@oag.ok.gov

ATTORNEYS FOR APPELLANT/RESPONDENT

February 28, 2024

## <u>TABLE OF CONTENTS</u>

Page

**INTRODUCTION**................................................................2

**ARGUMENT AND AUTHORITY** .................................................4

    **A.**    **As Previously Shown, the District Court Erred,
and White is Entitled to Relief** ......................................4

    **B.**    **With Respect to Ground I, Moore has Failed to
Demonstrate that White Waived Review of the
District Court's Actual Innocence Finding**......................6

        *1.*    *White has Preserved Her Challenge to the District
Court's Actual Innocence Finding*................................6

        *2.*    *White has Preserved Her Challenge to the District
Court's <u>Strickland</u> Prejudice Finding*..........................13

        *3.*    *Conclusion* .........................................................14

    **C.**    **With Respect to Ground II, Moore has Failed to
Demonstrate that White's Arguments Fail on the Merits**.............15

        *1.*    *Moore Fails to Demonstrate that White Misapplied
the <u>Schlup</u>/<u>McQuiggin</u> Standard*................................15

        *2.*    *Moore Fails to Fully Confront White's Factual
Arguments* ........................................................18

        *3.*    *Conclusion* .......................................................23

**CONCLUSION**...............................................................23

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Barfield v. Brierton*,
  883 F.2d 923 (11th Cir. 1989)............................................................13

*Bird v. Hurst*,
  No. 02-3925, 110 F. App'x 474 (6th Cir. Aug. 9, 2004)....................................17

*Greer v. Dowling*,
  947 F.3d 1297 (10th Cir. 2020)................................................... 10, 11

*Jackson v. Virginia*,
  443 U.S. 307 (1979)............................................................15

*McQuiggin v. Perkins*,
  569 U.S. 383 (2013)............................................................5, 15

*Pacheco v. El Habti*,
  62 F.4th 1233 (10th Cir. 2023) ............................................................5

*Santucci v. Commandant, United States Disciplinary Barracks*,
  66 F.4th 844 (10th Cir. 2023) ............................................................14

*Schlup v. Delo*,
  513 U.S. 298 (1995)........................................... 5, 6, 16, 18

*Strickland v. Washington*,
  466 U.S. 668 (1984)................................... 4, 6, 9, 13, 14, 23

*Taylor v. Powell*,
  7 F.4th 920 (10th Cir. 2021) ................................................. 16, 18

*United States v. Melton*,
  861 F.3d 1320 (11th Cir. 2017)............................................................13

*United States v. Morgan*,
  384 F.3d 439 (7th Cir. 2004)............................................................14

*United States v. One Parcel of Real Prop.*,
   73 F.3d 1057 (10th Cir. 1996)..................................................................12

*Yellen v. Cooper*,
   828 F.2d 1471 (10th Cir. 1987)...............................................................14

## STATUTES

28 U.S.C. § 2244...........................................................................................1

## RULES

10th Cir. R. 28.1 ..........................................................................................1

Fed. R. Civ. P. 4...........................................................................................14

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

| | | |
|---|---|---|
| **BEVERLY MICHELLE MOORE,** | ) | |
| | ) | |
| **Petitioner/Appellee,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-6133** |
| | ) | |
| **TAMIKA WHITE, Warden,** | ) | |
| | ) | |
| **Respondent/Appellant.** | ) | |

## REPLY BRIEF OF APPELLANT/RESPONDENT

This matter is currently before the Court on Appellant/Respondent Tamika White's appeal of the United States District Court for the Western District of Oklahoma's Order and Judgment conditionally granting Appellee/Petitioner Beverly Michelle Moore federal habeas corpus relief—following previous findings of actual innocence sufficient to overcome 28 U.S.C. § 2244(d)'s time bar and the application of independent and adequate state procedural bars—based upon ineffective assistance of trial counsel (App. Vol. XIV, at 3690-3739).[1] White filed her Opening Brief to this Court on December 8, 2023. Moore filed her Opening Response Brief on February 7, 2024. White respectfully submits the present Reply Brief to address

---

[1] White will refer to her fourteen-volume Appendix, filed contemporaneously with her Opening Brief, as "App. Vol. __ , __" and will provide specific reference to volume number and internal Bates pagination. *See* 10th Cir. R. 28.1(A)(1). In citations to White's Opening Brief and Moore's Opening Response Brief, White will refer to the CM/ECF header pagination rather than the documents' internal pagination.

Moore's arguments, while also reaffirming and renewing all the arguments White made in her Opening Brief.

## **INTRODUCTION**

This case is currently before this Court following over a decade of various proceedings in state and federal court concerning Moore's allegation that she is actually, factually innocent of murdering A.S., her boyfriend's twenty-two-month-old son (App. Vol. I, 137-40) in January 2004, and that she received ineffective assistance of counsel during her trial in Oklahoma County District Court Case No. CF-2004-351 (App. Vol. IV, 1056-58). While Moore's state appeals of her murder conviction ultimately proved unsuccessful, Moore found success in federal court.[2]

In 2010, after Moore filed an Amended Petition to the federal District Court, White sought to dismiss Moore's Amended Petition as barred by the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (App. Vol. V, 1282-96). However, over White's objection, the District Court determined that Moore "had made a sufficient showing of the probability of actual innocence sufficient to permit her case to overcome the [time] limitations bar" (App. Vol. IX, 2328-92; App. Vol. X, 2393-2408, 2507-10). Later, White sought to

---

[2] In the interest of brevity and judicial economy, White has only briefly summarized the federal court proceedings below and will only discuss the facts where necessary. For a more detailed discussion of the facts or the federal court proceedings below, see the "Facts" and "Procedural History" sections of White's Opening Brief (Aplt's Br. 12-24).

dismiss the Amended Petition for lack of exhaustion—however, the District Court ultimately administratively closed the case in order to allow Moore to exhaust her claim of ineffective assistance of counsel based on newly discovered evidence (App. Vol. X, 2511-26, 2575-82, 2618-20).

After nearly seven years of pursuing post-conviction relief in state court, Moore filed a Second Amended Petition to the federal District Court in 2019 containing additional claims (App. Vol. XI, 2790-2896). White initially responded to the Second Amended Petition by arguing that Moore's claims were either unexhausted or procedurally barred and not entitled to review (App. Vol. XI, 2897-2990; App. Vol. XII, 2991-3015). However, after these arguments were rejected by the District Court, White responded to Moore's claims on the merits, while still maintaining her previous procedural arguments, and argued that Moore was not entitled to relief (App. Vol. XII, 3039-60, 3093-3252). However, the District Court ultimately sided with Moore and determined, based upon the prior actual innocence finding, that trial counsel's deficient performance during Moore's trial prejudiced her (App. Vol. XIII, 3426-3588; App. Vol. XIV, 3589-3636, 3690-3739). The District Court therefore granted Moore conditional habeas relief in the form of release or retrial (App. Vol. XIV, 3738).

White subsequently sought and received a stay of this decision from the District Court and thereafter appealed the District Court's decision to this Court.

Moore has since responded in opposition to White's request for relief and argued that White's arguments should fail pursuant to waiver/abandonment or on the merits. Respectfully, however, as will be shown below, Moore has failed to rebut White's strong showing that the District Court erred in embracing Moore's claim of actual innocence and thereafter finding prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), based upon this alleged evidence of actual innocence. As such, White is entitled to relief.

## <u>ARGUMENT AND AUTHORITY</u>

### A.     As Previously Shown, the District Court Erred, and White is Entitled to Relief:

As demonstrated more fully in White's Opening Brief, the District Court erred when it embraced a tenuous actual innocence claim—raised by Moore *years* after trial—supported by affidavits from interested parties (*i.e.*, family and friends of Moore) and expert witnesses with histories of undermining the diagnosis of pediatric abusive head trauma. That particular error permeated the remainder of the federal habeas proceedings and ultimately led the District Court to grant Moore—someone who explicitly admitted to abusing a defenseless toddler by shaking him and hitting his head against the floor—conditional habeas relief in the form of release or retrial.

In short, the District Court erred by substituting its own judgment for that of a reasonable and properly instructed jury when analyzing Moore's actual-innocence claim, and, in so substituting its judgment, it also ignored the fact that a classic battle

4

of the experts does not sufficiently rise to the level of actual innocence under *Schlup v. Delo*, 513 U.S. 298 (1995), and *McQuiggin v. Perkins*, 569 U.S. 383 (2013). In so doing, the District Court erred in two main ways. *First*, the District Court failed to acknowledge that a reasonable and properly instructed jury would not have been *bound* to accept the "scientific" and "expert" opinions regarding the timing of A.S.'s death from Moore's expert (and potentially biased) witnesses or the evidence of A.S.'s prior falls and developmental delays from Moore's lay (and interested) witnesses. Rather, a reasonable jury could have accepted the State's theory that A.S. immediately collapsed following Moore's infliction of acute head trauma via her callous act of shaking and impacting little A.S.'s head against his bedroom floor (Aplt's Br. 36-53). *Second*, the District Court failed to consider that—even if a reasonable jury would have been *bound* to accept Moore's proffered evidence as true—Moore's actions still likely would have been a substantial factor in bringing about A.S.'s death under Oklahoma law. In other words, by repeatedly shaking and impacting A.S.'s head against the floor (which Moore *admitted* to doing), Moore aggravated A.S.'s preexisting injuries from his alleged prior falls and caused A.S.'s rapid decline to death on January 13, 2004 (Aplt's Br. 54-58).

Moreover, aside from substituting its judgment for that of a reasonable jury, the District Court also ignored the theories of equity and moral culpability underlying actual innocence claims. *Pacheco v. El Habti*, 62 F.4th 1233, 1242, 1244

(10th Cir. 2023). By sidestepping *Moore's admission that she abused A.S.*, the District Court failed to confront the fact that Moore's murder conviction simply does not constitute a manifest injustice. *See Schlup*, 513 U.S. at 321. For all these reasons, particularly considering Moore's failure to rebut or otherwise overcome White's arguments, *see infra*, White is entitled to relief.

**B.     With Respect to Ground I, Moore has Failed to Demonstrate that White Waived Review of the District Court's Actual Innocence Finding:**

In Ground I of her Opening Response Brief (Aplee's Br. 21-29), as White predicted, Moore raises various arguments asking this Court to find White's claims regarding the District Court's actual innocence and *Strickland* prejudice findings waived and/or abandoned. However, Moore's arguments are unavailing, and White's claims can and should be properly considered by this Court on appeal.

*1.    White has Preserved Her Challenge to the District Court's Actual Innocence Finding:*

With respect to actual innocence, as argued in her Opening Brief (Aplt's Br. 30-33), White has undeniably preserved her challenge to the District Court's actual innocence finding, particularly with respect to AEDPA's time bar. Importantly, White filed a *lengthy* objection to the September 7, 2011, Proposed Findings of Fact and Conclusions of Law ("FFCL") that initially found the actual-innocence gateway fulfilled with respect to AEDPA's time bar (App. Vol. IX, 2363-92; App. Vol. X, 2393-2408). In so objecting, White made numerous arguments, including, but not

limited to, the following: 1) Moore's proffered evidence of actual innocence was neither "new" nor "reliable"; 2) Moore's actual-innocence claim was supported, in large part, by affidavits from interested parties or affidavits from biased experts and was therefore unreliable; 3) the FFCL found Moore innocent despite finding her confession valid and without considering what evidence a reasonable jury would have found persuasive in this battle of the experts; and 4) that Moore's act of shaking A.S.'s head against the floor could have contributed to A.S.'s death even assuming he had preexisting injuries (App. Vol. IX, 2375-92; App. Vol. X, 2393-2408).[3]

---

[3] While Moore argues that White did not raise all these arguments *until* she objected to the FFCL (Aplee's Br. 11 & n.5)—in other words, Moore contends White waived certain arguments by failing to raise them when responding to Moore's actual innocence arguments (App. Vol. VIII, 1995-2049)—it is worth noting that the District Court did not, in adopting the FFCL, make any finding that White had waived any of the arguments she raised when challenging the FFCL (App. Vol. X, 2508-10 ("To the extent Respondent argues that [the Magistrate Judge] misconstrued the evidence or failed to properly evaluate it in light of an actual innocence claim or the standards governing such a claim, the Court finds Respondent's arguments unpersuasive.")). Furthermore, Moore provides no authority to demonstrate that this would, in fact, constitute waiver, particularly with respect to the objections White made concerning *specific* findings within the FFCL. For instance, the objection to the FFCL's inexplicable finding that Moore's confession was valid yet A.S.'s death was somehow apparently not caused by her admitted abuse.

Moreover, to the extent that Moore argues that White did not raise the second-impact syndrome theory to the District Court, her claim is incorrect (Aplee's Br. 43-47). While White did not use the exact term, she certainly argued that prior accidental injuries and intentional abuse were not mutually exclusive and that Moore still could have been a contributing factor in A.S.'s death (App. Vol. IX, 2392 (the FFCL "assumed that it was not possible for A.S. to have pre-existing head injuries and for the Petitioner to shake him to death"); App. Vol X, 2407 & n.16 ("it is no answer to say that the alleged pre-existing head injuries (assuming they existed at all) may

After the District Court rejected White's aforementioned arguments (App. Vol. X, 2508-10), and after Moore returned from state post-conviction proceedings to file her Second Amended Petition in federal court, White briefly re-urged the time bar but mainly argued that the new claims in Moore's Second Amended Petition were unexhausted and/or *procedurally barred*, that actual innocence should be revisited to that extent (App. Vol. XI, 2959, 2967), and that the procedural bars could not be overcome via actual innocence (App. Vol. XI, 2897-2990; App. Vol. XII, 2991-3015). The Magistrate Judge even read White as arguing such: "Respondent faults Petitioner for not presenting the new scientific evidence to the state courts and invites this Court to *revisit* its previous ruling that the new scientific evidence Petitioner previously presented to this Court *is sufficient to satisfy the miscarriage of justice exception to procedural bar*" (App. Vol. XII, 3054 (emphasis added)).

After the District Court rejected these procedural arguments, White ultimately proceeded to respond to the merits of the Second Amended Petition—however, White maintained that Moore's claims were untimely and unexhausted or otherwise procedurally barred (App. Vol. XII, 3114). Finally, after this, White objected to the March 22, 2021, Supplemental Report and Recommendation ("Supplemental R&R") that repeated the original actual-innocence finding and relied upon that

---

have been a contributing factor to A.S.'s death, as the Petitioner's confessed repeated slamming of A.S.'s head against the floor is plainly unreasonable force, and in any case would likely have been fatal to any two-year-old child")).

actual-innocence finding to fulfill *Strickland*'s prejudice prong (App. Vol. XIV, 3619-30). While Moore argued that White's arguments as to actual innocence within her objection were waived, the District Court made no finding of waiver (App. Vol. XIV, 3698 n.3 ("Petitioner responds that 'Respondent has waived any argument as to the finding of actual innocence for appellate purposes,'" but "[t]his Court need not and does not address this waiver issue.")).

Now, despite White's repeated objections in this case, Moore argues that White has waived her challenge to the finding of actual innocence by failing to object to the December 12, 2019, Report and Recommendation ("R&R") that rejected White's invitation to "revisit" the finding of actual innocence as it related to procedural bars and the Second Amended Petition (App. Vol. XII, 3054-59). In short, Moore argues that because White only objected to the Magistrate Judge's actual innocence finding as to the First Amended Petition (as laid out in the September 7, 2011, FFCL), and because White failed to object to the Magistrate Judge's renewed actual innocence finding as to the Second Amended Petition (as laid out in the December 12, 2019, R&R), White has failed to preserve her appellate arguments regarding actual innocence (Aplee's Br. 22-29).

However, Moore's waiver arguments must fail for two main reasons. *First*, with respect to Moore splitting hairs over White's objections to certain rulings and not others, Moore conflates the issues of timeliness and procedural bars in making

9

such an argument (Aplee's Br. 22-26). In White's Opening Brief to this Court, White conceded that she did not object to the December 12, 2019, R&R due to the Magistrate Judge's stern language regarding White's attempt to revisit actual innocence with respect to the state *procedural bars* (Aplt's Br. 31-32). However, such a decision not to object with respect to the *procedural bars* did not somehow undo White's previous objection with respect to AEDPA's *time bar*. While Moore argues that White relies on a "strained" reading of *Greer v. Dowling*, 947 F.3d 1297 (10th Cir. 2020), White strongly disagrees (Aplee's Br. 28). In *Greer*, this Court grappled with two reports and recommendations challenged by a petitioner on appeal. The first report and recommendation, to which the petitioner objected, dealt with summary judgment for the respondents on two of the petitioner's claims due to lack of exhaustion. *Greer*, 947 F.3d at 1301. The second report and recommendation, to which the petitioner did not object, dealt with summary judgment for the respondents on the remainder of the petitioner's claims due to qualified immunity and the lack of available declaratory/injunctive relief. *Id.* While this Court declined to review the petitioner's arguments concerning the *second* report and recommendation, this Court reviewed, and granted relief on, the petitioner's arguments concerning the *first* report and recommendation. *Id.* at 1302-03.

In its opinion in *Greer*, this Court explicitly rejected the petitioner's argument that his objection to the first report and recommendation should have also been regarded as an objection to the second report and recommendation:

> We disagree. Mr. Greer timely objected to the first report and recommendation on grounds that also relate to the second report and recommendation. But Mr. Greer did not renew these objections in response to the second report and recommendation, so the previous objection cannot preserve appellate review.

*Id.* at 1304. Clearly, while the petitioner did not object to the second report and recommendation and thereby waived any challenge to it, such failure to object only waived the petitioner's arguments as to that *specific* report and recommendation. Indeed, what White finds most important from this language is this Court's explicit statement that certain grounds involved in the petitioner's objection to the first report and recommendation were also implicated by the second report and recommendation and could have been renewed—nevertheless, this Court found that the petitioner's challenge to the first report and recommendation remained *preserved*.

Here, while Moore seems to believe that White's failure to object to the finding of actual innocence as it related to *procedural bars* in the December 12, 2019, R&R somehow waived or rescinded White's earlier objection to the finding of actual innocence as it related to *timeliness* in the September 7, 2011, FFCL, *Greer* clearly says otherwise. While certain arguments within White's objection to the September 7, 2011, FFCL certainly related to the December 12, 2019, R&R and

could have been renewed in an objection thereto, White's failure to object to the latter did not impact White's objection to the former in any way. Thus, even if this Court finds that White did not adequately preserve her challenge to the actual innocence finding as to *procedural bars*, White certainly preserved her challenge to the actual innocence finding as to *timeliness*.[4] *See United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review"). Moore's argument is therefore without merit.

*Second*, with respect to Moore's claim that White's arguments below regarding actual innocence and timeliness with respect to the *First Amended Petition* were insufficient to preserve arguments regarding actual innocence and timeliness with respect to the *Second Amended Petition*, her argument strains logic and reason (Aplee's Br. 26 & n.20). In short, Moore argues that White failed to preserve her current arguments regarding actual innocence and timeliness by failing to raise a timeliness claim to the District Court or otherwise object on timeliness grounds to the District Court regarding Moore's Second Amended Petition. However, this

---

[4] Indeed, because White has preserved the District Court's actual innocence finding as to timeliness, the question of whether her claims should have been procedurally barred in federal court is ultimately irrelevant. Moore's federal habeas claims, being time-barred, should not have been reviewed at all.

suggestion is truly incredible. Indeed, according to Moore, even after *losing at every stage*, White was supposed to re-urge a timeliness challenge to the Second Amended Petition despite the District Court's previous, explicit finding that Moore overcame AEDPA's time bar via evidence of actual innocence. This suggestion is simply illogical, and it would be a waste of judicial resources to require parties to constantly relitigate non-final rulings. In this case, once Moore returned to federal court and filed her Second Amended Petition, it had already been well-established that the District Court believed her proffered evidence sufficiently satisfied the actual innocence gateway. Thus, the issue of timeliness, regardless of the operative petition, had already been answered.[5] Moore's waiver argument is unpersuasive.

2.    *White has Preserved Her Challenge to the District Court's* <u>Strickland</u> *Prejudice Finding:*

Moore next argues—in a single sentence—that "the Warden has waived appellate review of the factual basis of the prejudice analysis in the court's *Strickland* prejudice holding" (Aplee's Br. 29).[6] However, in so arguing, Moore does not argue

---

[5] Perhaps situations like this are part of the reason why appellants can, on appeal, seek "review of the entire final judgment which implicates all non-final orders preceding it," *Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir. 1989), or why interlocutory appeals are often not required to preserve appellate issues, *United States v. Melton*, 861 F.3d 1320, 1325 n.2 (11th Cir. 2017). Otherwise, situations could arise where parties needlessly relitigate non-final orders out of fear of potential waiver.

[6] Interestingly, Moore also argues that "Appellant does not challenge the district court's application of *Strickland v. Washington*, 466 U.S. 668 (1984)" (Aplee's Br.

*how* White allegedly waived appellate review of the District Court's prejudice finding. Indeed, as noted *supra*, White undoubtedly objected to the March 22, 2021, Supplemental R&R's *Strickland* prejudice finding (App. Vol. XIV, 3619-30 ("**THE R&R ERRED IN ITS PREJUDICE ANALYSIS**")). Thus, considering Moore's clear lack of *any* argument or case law, her argument that White has waived her challenge to the *Strickland* prejudice finding is without merit. *Cf. United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004) ("[a] waiver argument, after all, can be waived by the party it would help"); *Yellen v. Cooper*, 828 F.2d 1471, 1476 (10th Cir. 1987) ("Waiver, like immunity, is an affirmative defense which must be affirmatively pleaded."); Fed. R. Civ. P. 4(C)(1); *cf. also Santucci v. Commandant, United States Disciplinary Barracks*, 66 F.4th 844, 851 n.9 (10th Cir. 2023) (insufficient argument typically does not trigger this Court's review).

3.    *Conclusion:*

As shown, and despite Moore's arguments to the contrary, White undoubtedly preserved her challenges to the District Court's actual innocence and *Strickland* prejudice findings. As such, White's challenges to the District Court's grant of habeas relief are ripe for this Court's review.

---

20). However, White's Opening Brief demonstrates that White very much does challenge the District Court's application of *Strickland* to Moore's case (Aplt's Br. 12, 25-27, 30-31, 33, 40, 60).

**C.    With Respect to Ground II, Moore has Failed to Demonstrate that White's Arguments Fail on the Merits:**

In Ground II of her Opening Response Brief (Aplee's Br. 29-47), Moore makes a litany of arguments that White's contentions, setting aside the issue of waiver, should also fail on the merits. However, Moore's arguments in favor of affirmance are unavailing and fail to rebut the strong case made by White in her Opening Brief. Ultimately, the District Court erred, and White is entitled to relief.

*1.    Moore Fails to Demonstrate that White Misapplied the Schlup/McQuiggin Standard:*

In her Opening Response Brief, Moore argues that White has conflated the standards for sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979), and actual innocence under *Schlup* and *McQuiggin* because White contends, in Moore's estimation, that there is still some evidence upon which "a reasonable jury could have based a finding of guilt" (Aplee's Br. 30). Moore further argues that White is evidently viewing the evidence in the light most favorable to the State rather than assessing the evidence as a whole (Aplee's Br. 31). However, Moore's contentions are without merit, and White has not conflated *Jackson* with *Schlup* and *McQuiggin* whatsoever. Rather, Moore, like the District Court before her, is not viewing the evidence as a whole under the reasonable juror standard and is crediting her own judgment over that of a reasonable jury faced with all the facts and evidence.

15

Again, as argued by White in the Opening Brief, a showing of actual innocence "does not merely require a showing that a reasonable doubt exists in the light of the new evidence," but rather that it is more likely than not that "*no reasonable juror* would have found the defendant guilty." *Schlup*, 513 U.S. at 329 (emphasis added). "Thus, a petitioner does not meet the threshold requirement unless he [or she] persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him [or her] guilty beyond a reasonable doubt." *Id.* "This standard requires courts to engage in a counterfactual analysis, determining whether a jury confronted with all the evidence now known would still have convicted the petitioner of the crime charged." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021). In so applying this standard in her Opening Brief, White analyzed what a reasonable and properly instructed jury "would do with the new evidence" now presented by Moore. *Id.* at 938.

However, here, Moore nonetheless faults White for discussing the weight and credibility of the trial evidence versus the newly proffered evidence and how a jury faced with such evidence would have handled it[7] (Aplee's Br. 31). In so doing,

---

[7] Moore also asserts, in passing, that the jury would not now be able to consider statements by the State's experts that A.S. would have immediately lost consciousness after Moore's abuse, as she reasons that such a statement is "no longer considered true within the scientific community" (Aplee's Br. 30-31 & n.11). However, aside from failing to provide *any* legal authority precluding a jury from considering such expert opinions, Moore does not explain how she is able to speak on behalf of the *entire* scientific community on pediatric abusive head trauma.

Moore seems to hang her hat on the presence of reasonable doubt, and she continues with the District Court's mistaken belief that the jury would have been *bound* to accept the "scientific" and allegedly "undisputed" opinions of Moore's experts (Aplee's Br. 32-43). However, as White already demonstrated in her Opening Brief, a reasonable and properly instructed jury *would not* have been bound to accept the opinions of Moore's experts or witnesses and could have, instead, weighed the credibility of such evidence against the State's evidence. *See Bird v. Hurst*, No. 02-3925, 110 F. App'x 474, 480 (6th Cir. Aug. 9, 2004) (unpublished) (on appeal, petitioner argued that he was actually innocent of assault with a deadly weapon because expert could opine that petitioner's spit could not have spread HIV to the victim; however, "[w]hether HIV-infected saliva is capable of inflicting death or whether [petitioner] intended to use his saliva as a weapon were issues of fact for

---

Indeed, recent articles would seem to indicate that symptomatic responses to head trauma vary greatly from child to child, and "[a]fter trauma, infants and children may have findings ranging from nonspecific symptoms that require only supportive care to *acute life-threatening complications requiring urgent care*." Kun-Long Hung, *Pediatric Abusive Head Trauma*, Biomedical Journal 43 (2020) 240-50, 242, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7424091/ (last visited February 27, 2024) (emphasis added). Indeed, "[t]he most severe trauma cases may present with life-threatening symptoms and signs including apnea, severe respiratory distress, bulging fontanel, *decreased consciousness*, seizures, and shock." *Id.* (emphasis added). *See also* Tina Joyce, William Gossman, and Martin R. Huecker, *Pediatric Abusive Head Trauma*, StatPearls Publishing, *available at* https://www.ncbi.nlm.nih.gov/books/NBK499836/ (last visited February 27, 2024).

the jury," and "[t]he jury would not have been bound to accept any expert testimony put forward on behalf of petitioner").

Thus, while a jury certainly could have embraced or believed Moore's newly proffered evidence as to the cause and/or timing of A.S.'s fatal injury, and while Moore believes there is reasonable doubt in this case, Moore has *never* shown that *it is more likely than not that no reasonable and properly instructed jury would have convicted Moore of murder*. *Schlup*, 513 U.S. at 329. This is especially true considering how a reasonable jury would have handled Moore's newly proffered evidence from biased and interested witnesses in light of Moore's confession to abusing A.S., Moore's suspicious post-crime behavior, and A.S.'s acute and significant abdominal injury. Thus, rather than White misunderstanding the actual innocence standard, Moore, like the District Court before her, has improperly embraced reasonable doubt and her own view of the evidence rather than a reasonable jury's view of the evidence. *Taylor*, 7 F.4th at 927-38. White is thus entitled to relief.

### 2. *Moore Fails to Fully Confront White's Factual Arguments:*

In her Opening Response Brief, while reiterating many of the technical words used by her various experts (many of whom are known defense witnesses or Shaken

Baby/Shaken Impact Syndrome Deniers),[8] Moore fails to grapple with many of the factual arguments made in White's Opening Brief regarding evidence supportive of the diagnosis of acute and abusive head trauma in A.S.'s case. Moore's failure to grapple with these facts is particularly illuminating.

*First*, Moore fails to address White's discussion of other physical evidence supporting the diagnosis of acute and abusive trauma in A.S.'s case (Aplt's Br. 13-15, 19, 25 & n.12, 30 & n.17): A.S.'s significant abdominal injury present at autopsy (App. Vol. III, 614-19), as well as the evidence of fresh blood in A.S.'s nose and throat when he was being seen by first responders (App. Vol. I, 197, 200, 217-18, 230, 243). Importantly, Dr. Chai Choi, the forensic pathologist who conducted A.S.'s autopsy, opined that A.S.'s abdominal injury (or periserosal mesenteric hemorrhaging of the duodenum) could have been caused by "forceful" trauma of this membrane "against the backbone," which can be a common finding in child abuse cases (App. Vol. III, 614-19). While Moore and one of her habeas experts (indeed, the only habeas expert to even address the abdominal injury in any detail) have previously tried to explain away this injury by attributing it to Moore's alleged incorrect application of CPR (App. Vol. VII, 1793-94 & n.1), Moore testified at trial

---

[8] *See generally* Joëlle Anne Moreno & Brian Holmgren, *The Supreme Court Screws Up the Science: There Is No Abusive Head Trauma/Shaken Baby Syndrome "Scientific" Controversy*, 2013 Utah L. Rev. 1357, 1376-77, 1396-98, 1408-14 & nn.73, 75, 76, 159, 161, 213, 217 (2013) (listing several of Moore's expert witnesses as frequent defense witnesses).

that she had been trained in "infant CPR and regular CPR"—thus, it seems unlikely that Moore would have performed CPR so improperly and forcefully as to cause such an injury (App. Vol. III, 715-16). Moreover, with respect to the fresh blood emanating from A.S.'s body *shortly after the period of time Moore admitted to shaking A.S.*, there was enough bleeding that A.S.'s blood also ended up on his sleeve and on Moore's shirt (App. Vol. I, 146-48, 197, 200, 217-18, 230, 243). Like her habeas experts before her, Moore now fails to grapple with this fact and fails to rebut this persuasive physical evidence of *abusive* trauma, and she fails to acknowledge that a reasonable and properly instructed jury could have embraced this evidence of trauma even in light of her newly proffered evidence.

*Second*, Moore fails to fully acknowledge her repeated statements that A.S. was totally fine on the day of his collapse, as well as the suspicious nature of her after-the-fact-evidence regarding A.S.'s allegedly severe symptoms in the days leading up to his death. As noted in White's Opening Brief, Moore and Todd Snyder, A.S.'s father, informed emergency room doctors that A.S. had been a relatively normal and healthy child, except for some bouts of diarrhea, up until his collapse on January 13, 2004. Moreover, at trial, Moore doubled down and even testified that A.S. seemed totally "fine" that day and was not acting unusual (App. Vol. III, 724 ("he seemed fine to me . . . [h]e acted like he always did")). Contrast this, however, with the post-trial evidence, where Moore and her friends/family alleged, among

other things, that A.S. looked like an "old-time alien[]" with a skinny body and abnormally huge head; appeared "lifeless" and lethargic, only ever wanted to be held, and acted like a "drunk person" in the days leading up to his collapse; had regular "seizure-like episodes"; and, in the weeks and days leading up to his collapse, only wanted to be held in certain positions where his head could be inclined or otherwise only wanted to lie down (App. Vol. V, 1438-42; App. Vol. VI, 1576-79, 1593-95, 1610-11, 1649-61; App. Vol. VII, 1698-1701; App. Vol. VIII, 1921-23).

While Moore deflects and attempts to blame Dr. Johnny Griggs, one of A.S.'s treating physicians at the emergency room, for not asking specific enough questions about A.S.'s recent behavior and symptoms or for otherwise "misunders[tanding] the medical history provided by" Moore and Mr. Snyder (Aplee's Br. 38), it defies logic why Moore—having known of A.S.'s alleged odd symptoms and recent falls involving his head (including the most recent fall involving the back of his head allegedly hitting a cast-iron bathtub)—*would not have found such information extremely important to provide to the emergency room doctor treating A.S. for catastrophic symptoms stemming from suspected head trauma* (Aplee's Br. 38 ("Ms. Moore admits that she did not specifically call Dr. Griggs' attention to A.S.'s energy level/lethargy preceding the fall as she attributed that to his diarrhea; Dr. Griggs did not ask about any prior falls.")). Rather, Moore apparently expected Dr. Griggs to read her mind. By ignoring her statements regarding A.S.'s normal and totally "fine"

behavior, as well as the suspicious nature of her belated evidence regarding prior falls and severe symptoms, Moore fails to rebut White's argument that a reasonable and properly instructed jury could have embraced Dr. Griggs's testimony over Moore's newly-proffered evidence regarding the timing of A.S.'s injury.

*Third*, Moore fails to fully grapple with the evidence that the presence of hemosiderin (an iron-storage complex) at the time of autopsy does not necessarily mean that A.S. conveniently collapsed—and later died—from an old injury *immediately after Moore admitted to abusing him*. As pointed out in White's Opening Brief, Dr. Choi opined that A.S. died of an *acute* head injury (Aplt's Br. 19, 40, 50). And, importantly, in her autopsy report, Dr. Choi specifically noted the presence of hemosiderin while also reaffirming her conclusion that A.S.'s head injury was an *acute* injury: "**<u>Skin contusions, including scalp contusions:</u>** Sections show hemorrhages with occasional neutrophils infiltration in the hemorrhagic area of the back of the head, along with *scattered hemosiderin laden macrophages* present in the contusion at the back of the head, *likely recent and acute hemorrhages*" (App. Vol. V, 1434 (italics added)).

Nevertheless, while admitting, in passing, that Dr. Choi did note the presence of hemosiderin during her autopsy of A.S.'s body, Moore faults Dr. Choi for failing to take additional investigative steps such as making special stains of A.S.'s brain material to "better determine the development of hemosiderin"; Moore also

regurgitates her habeas experts' "scientific" and allegedly "undisputed" assertions that the presence of hemosiderin definitively proved that A.S.'s fatal head injury, assuming that was the cause of his death, occurred weeks or days before Moore admitted to shaking A.S. and hitting the back of his head against his bedroom floor (Aplee's Br. 15, 18, 40-41). However, in so arguing, Moore fails to rebut White's argument that a reasonable and properly instructed jury could have embraced Dr. Choi's opinion over the opinions of Moore's newly proffered experts, especially knowing that Dr. Choi undoubtedly considered the presence of hemosiderin when dating the age of A.S.'s head injury.

> 3.    *Conclusion:*

Clearly, considering all of the above, Moore's factual and legal arguments do nothing to undermine the arguments within White's Opening Brief. As shown, the District Court undeniably erred in finding that Moore passed through the actual innocence gateway based upon her newly proffered evidence *and* in finding that Moore showed a likelihood of a different result under *Strickland*'s prejudice prong. White is therefore entitled to relief.

## CONCLUSION

Based on the above and foregoing law, the District Court erred in finding Moore passed through the actual-innocence gateway sufficient to overcome the AEDPA's time bar, procedural bars, and establish *Strickland* prejudice. White

respectfully requests that this Court vacate the District Court's conditional grant of habeas relief and remand to the District Court to dismiss Moore's Second Amended Petition as untimely under the AEDPA, or, in the alternative, deny relief as to Moore's ineffectiveness claim.

Respectfully submitted,

**GENTNER F. DRUMMOND**
**ATTORNEY GENERAL OF OKLAHOMA**

**s/ TESSA L. HENRY**
**TESSA L. HENRY, OBA #33193**
**KEELEY L. MILLER, OBA #18389**
**ASSISTANT ATTORNEYS GENERAL**
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Fax: (405) 522-4534
Service email: fhc.docket@oag.ok.gov

**ATTORNEYS FOR APPELLANT WHITE**

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 5773 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point type.

s/TESSA L. HENRY

## CERTIFICATE OF SERVICE

**X**      I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of this Court on February 28, 2024, and for electronic transmission to:

Andrea D. Miller
Christine M. Cave
*Counsel for Appellee Moore*

s/TESSA L. HENRY

## CERTIFICATE OF DIGITAL SUBMISSION

This is to certify that:

1.      All required redactions have been made and, with the exception of those redactions, every document submitted in Digital Form or scanned PDF format is an exact copy of the document filed with the Clerk;

2.      The digital submissions have been scanned for viruses with Symantec Endpoint Protection, Updated February 28, 2024, and according to said program, are free of viruses.

s/TESSA L. HENRY